UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JALAM VANTROY SMITH, | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:21-CV-178-TLS-JPK |
| THE LUTERAN UNIVERSITY ASSOCIATION INC, *Valparaiso University*, | |
| Defendant. | |

**OPINION AND ORDER**

Jalam Vantroy Smith, a Plaintiff proceeding without counsel, filed a Complaint [ECF No. 1] against Defendant, the Lutheran University Association Inc. He also filed a Motion to Proceed In Forma Pauperis [ECF No. 2]. On July 16, 2021, the Court denied the motion because it was unsigned and granted leave to refile a motion that complied with the local rules. *See* July 16, 2021 Order 2, ECF No. 3. On July 22, 2021, Plaintiff filed a signed Motion to Proceed In Forma Pauperis [ECF No. 4]. For the reasons set forth below, the Plaintiff's Motion is DENIED. The Plaintiff's Complaint is DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Plaintiff is GRANTED additional time to amend his Complaint, accompanied either by the statutory filing fee or another Motion to Proceed In Forma Pauperis. If Plaintiff fails to amend his Complaint within the time allowed, the Clerk of Court will be directed to close this case without further notice to the Plaintiff.

**DISCUSSION**

Ordinarily, a plaintiff must pay a statutory filing fee to bring an action in federal court. 28 U.S.C. § 1914(a). However, the federal in forma pauperis statute, 28 U.S.C. § 1915, provides

indigent litigants an opportunity for meaningful access to the federal courts despite their inability to pay the costs and fees associated with that access. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989) ("The federal *in forma pauperis* statute . . . is designed to ensure that indigent litigants have meaningful access to the federal courts."). To authorize a litigant to proceed in forma pauperis, a court must make two determinations: first, whether the litigant is unable to pay the costs of commencing the action, 28 U.S.C. § 1915(a)(1); and second, whether the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief, *id*. § 1915(e)(2)(B).

Under the first inquiry, an indigent party may commence an action in federal court, without prepayment of costs and fees, upon submission of an affidavit asserting an inability "to pay such fees or give security therefor." *Id.* § 1915(a)(1). The Plaintiff's motion establishes that he is unable to prepay the filing fee.

Under the second inquiry, a court must look to the sufficiency of the complaint to determine whether it can be construed as stating a claim for which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. *Id.* § 1915(e)(2)(B). District courts have the power under § 1915(e)(2)(B) to screen complaints even before service of the complaint on a defendant and must dismiss the complaint if it fails to state a claim. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999). Courts apply the same standard under § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013).

To state a claim, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

2

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the Plaintiff's Complaint, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in his favor. *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

In his Complaint, the Plaintiff alleges that he received discriminatory treatment while enrolled at Valparaiso University. *See* Compl. 2, ECF No. 1. He claims that several adverse actions were taken against him in connection to his chemistry and social work courses. He also states that individuals at the university retaliated against him, threatened him, and conspired to deprive him of a right to education and his rights under Title VI. The Plaintiff seems to allege that the university departed from its ordinary policies and procedures in addressing these issues, and that the Office of Civil Rights (OCR) concluded that the university violated Title VI. In addition to these discrimination claims, Plaintiff contends that the university breached the "Valparaiso Educational/Benefit Payment Agreement" and that it unjustly retained his tuition payments. Lastly, the Plaintiff alleges that two professors published false and defamatory statements via the university email, and that various individuals published false and defamatory statements to OCR investigators.

The Plaintiff attaches numerous exhibits to his Complaint.[1] *See* ECF No. 1-1. The Plaintiff provides emails regarding course assignments that were submitted late, his academic

---

[1] Since filing his Complaint, the Plaintiff also filed two documents containing additional exhibits. *See* ECF Nos. 6–7. The exhibits include an estimated budget for a student at Pritzker School of Medicine, *see* ECF No. 6, information related to his enrollment and tuition payments at Valparaiso University, an OCR investigation letter about a complaint filed against the University of Illinois at Chicago, OCR investigative guidance, emails from the Association of American Medical Colleges, and emails between the Plaintiff and the OCR that reference a complaint he filed, *see* ECF No. 7. Because the Plaintiff's Complaint is in the screening process under 28 U.S.C. § 1915, the Court will consider these filings in determining whether the Plaintiff states a claim upon which relief can be granted. *See Williams v. Faulkner*, 837 F.2d 304, 307 (7th Cir. 1988) ("At this stage of the proceedings, we must consider all of the documents [plaintiff] filed in support of his claim and accept his allegations as true.").

performance, and his enrollment in courses. He includes various emails he received from medical schools regarding applications. Next, there is a page from a website purportedly showing that a Title VI investigation was opened against the university. The Plaintiff also provides emails that are related to a complaint he filed with the university and the university's subsequent investigation. Those messages state that the Plaintiff's complaint did not justify additional investigation because they failed to capture discriminatory intent. The messages note that some of the allegations of inappropriate behavior were being referred so they could be addressed. Finally, he includes typed notes describing an interaction he had with his professor. He states that "Dr. Leach showed extreme hostility and disdain toward me" when they discussed the Plaintiff's course assignments. ECF No. 1-1, pp. 47–48. He writes that Dr. Leach said he would "fail the course" regardless of how he did on the remaining exams and that he should "withdraw from the course immediately." *Id.* He states that when he asked Jennifer Easthope why Dr. Leach was hostile, she "said to [him] that Dr. Leach could have treated [him] the way she did because [he is] an older student." *Id.*

Ultimately, the Plaintiff seeks (1) restitution of grants and scholarships he received; (2) compensatory damages for his emotional distress, the additional debt he accrued, and the harm done to his prospects of becoming a medical student; and (3) punitive damages due to the extreme nature of the conduct.

**A. Title VI Claims (Counts I–III)**

The Plaintiff has invoked Title VI for his first three counts. The statute provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity" covered by Title VI. 42 U.S.C. § 2000d. The statute allows a private plaintiff to obtain both injunctive

relief and damages when intentionally discriminated against by a federal-funds recipient on account of race, color, or national origin. *Alexander v. Sandoval*, 532 U.S. 275, 279–80 (2001). The Plaintiff can prove intentional discrimination by establishing that he is a member of a protected class, he was meeting the university's legitimate expectations, there was an adverse action, and he was treated worse than similarly situated students. *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007). With that said, when pleading a discrimination claim, the Plaintiff "need only identify a challenged action and allege that the defendant acted because of [his] race." *Resendez v. Prance*, No. 3:16-cv-862 JD, 2018 WL 1531788, at *4 (N.D. Ind. Mar. 29, 2018) (citations omitted); *see Su v. E. Ill. Univ.*, 565 F. App'x 520, 521–22 (7th Cir. 2014) (describing the motion-to-dismiss standard for Title VI claims).

In Counts I–III, the Plaintiff identifies individuals employed by the Defendant who allegedly took the adverse actions. However, discrimination by the Defendant's employees is generally not enough to state a claim. *See Doe v. St. Francis Sch. Dist.*, 694 F.3d 869, 871 (7th Cir. 2012) (stating, in the Title IX context, that a school district cannot be liable for an employee's violation under a theory of respondeat superior); *see also Resendez*, 2018 WL 1531788, at *5; *Allen v. Bd. of Trs. Rock Valley Coll.*, No. 19-cv-05465, 2021 WL 4034067, at *8 (N.D. Ill. Sept. 3, 2021).[2] Rather, the Plaintiff must show that one of the Defendant's officials, "who at a minimum has authority to institute corrective measures," had "actual notice of," and was "deliberately indifferent to," the employees' discriminatory conduct. *St. Francis Sch. Dist.*, 694 F.3d at 871 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)); *see also Resendez*, 2018 WL 1531788, at *5; *Allen*, 2021 WL 4034067, at *8. Although the Plaintiff

---

[2] Although *Doe v. St. Francis School District* is a Title IX case, the Supreme Court has noted that Title IX and Title VI "operate in the same manner." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998). The Seventh Circuit has further explained that "a decision interpreting one generally applies to the other." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014).

alleges that the university intentionally departed from its policies and procedures, the allegations are generic and do not describe any of the university's actions. Similarly, the Plaintiff notes that the OCR was investigating the university, but he does not allege facts indicating an official's "actual knowledge of misconduct;" his Complaint only implies a "knowledge of the risk of misconduct." *St. Francis Sch. Dist.*, 694 F.3d at 871 (quoting *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004)). Thus, by not specifically alleging that a university official had the requisite knowledge and indifference, it appears that his Title VI claims should be dismissed. But even if the Defendant has alleged knowledge on behalf of the Defendant, there are other deficiencies in Counts I–III justifying dismissal.

   1. *Count I*

Beginning with Count I, the Plaintiff alleges that he was meeting "Legitimate Educational Expectations," that his chemistry professor and the student graders took "several Adverse Educational Actions against [him] that were extreme and outrageous," and that he "received worse Treatment than other Similarly-Situated students." Compl. 3, ¶¶ 2–4. These conclusory statements simply restate the elements of a discrimination claim. *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (explaining that "allegations in the form of legal conclusions" will not survive the Rule 12(b)(6) standard). The Plaintiff does not allege facts showing that he was meeting expectations or identifying other students receiving better treatment. And most importantly, he does not identify any *specific* adverse actions taken against him. While some of his exhibits indicate he was receiving poor grades in his courses, *see* ECF No. 1-1, pp. 1–15, he does not state whether this is the action at issue or claim that his poor grades were due to discrimination.[3] Count I will be dismissed for failure to state a claim.

---

[3] In his Complaint, the Plaintiff only references emails in allegations related to his defamation claims. *See* Compl. 14–16, ¶¶ 79–82, 93–96, 98.

### 2. Count II

Count II has the same defects as Count I because the Plaintiff merely reasserts identical allegations as Count I but identifies his social work course professor as the individual who took the adverse actions. *Compare* Compl. 3, ¶¶ 1–6 (Count I) *with* Compl. 4–5, ¶¶ 13–18 (Count II). Thus, because the Plaintiff has not alleged any facts to support Count II, it will also be dismissed.

### 3. Count III

In Count III, the Plaintiff appears to assert three different claims. First, the Plaintiff states that his professors, the discrimination complaint coordinator administrator, and his academic advisor retaliated against him for demanding his right to education and exercising rights from a student handbook. A retaliation claim under Title VI requires the Plaintiff to show that "(1) [he] engaged in protected activity, (2) [his] education institution took an adverse action against [him], and (3) a causal connection existed between the protected activity and the adverse action."[4] *Brown v. William Rainey Harper Coll.*, No. 16 C 1071, 2017 WL 3278822, at *5 (N.D. Ill. Aug. 1, 2017) (citing *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003); *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874, 889–90 (N.D. Ill. 2015); *Su*, 565 F. App'x at 521–22). Some of the Plaintiff's exhibits indicate he filed complaints with the school and the OCR, *see* ECF No. 1-1, pp. 21–24; ECF No. 7, pp. 49–52, which were arguably protected activities, *cf. Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). However, he does not identify an adverse action or include allegations connecting an adverse action to his protected activity.

---

[4] Although the Seventh Circuit has not formally recognized a Title VI retaliation claim, it seems to have acknowledged that plaintiffs can bring a claim of retaliation, *see Su*, 565 F. App'x at 521–22. Moreover, Title IX "encompasses suits for retaliation, because retaliation falls within the statute's prohibition of intentional discrimination on the basis of sex." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005). Given that Title IX and Title VI operate in the same manner, it seems likely that Title VI would also encompass a claim for retaliation.

Without more, conclusory statements that he was retaliated against by the Defendant's employees does not state a claim for relief.

Second, the Plaintiff claims that Dr. Leach made coercive statements and threats against him, causing him to withdraw from the course. Although this claim is titled "STEM Retaliation (Intimidation/Coercion)," he has not made any allegations supporting elements of a retaliation claim. With that said, the Plaintiff includes his notes describing an interaction with Dr. Leach where she was hostile toward the Plaintiff, said that he would fail Dr. Leach's course, and told the Plaintiff to withdraw. *See* ECF No. 1-1, pp. 47–48. Construing the Plaintiff's Complaint broadly, he may be trying to assert a hostile environment claim under Title VI, which requires showing severe or pervasive harassment that deprived him of access to educational benefits. *Qualls v. Cunningham*, 183 F. App'x 564, 567 (7th Cir. 2006); *see also Galster*, 768 F.3d at 617 (discussing Title VI hostile environment claims in the context of peer-to-peer harassment). However, the current allegations do not reflect "severe, pervasive, and objectively offensive" harassment, and the allegations do not indicate that the statements were made because of his race. *See Galster*, 768 F.3d at 617 (noting that "explicit references" to the plaintiff's "Russian origin" and the use of "gendered words" provided evidence of harassment based on national origin and sex). Thus, his claim regarding the interaction with Dr. Leach fails to state a claim.

Third, the Plaintiff alleges that two professors and an advisor conspired to deprive him of his right to an education and his civil rights under Title VI. As with his previous claims, the Plaintiff has not described this conspiracy except to say that it exists, and he does not describe any discriminatory action connected to this conspiracy. Therefore, this conspiracy claim also fails to state grounds for relief.

Accordingly, Count III will be dismissed for failing to state a claim.

### B. State Law Claims (Counts IV–VIII)

Counts IV–VIII are state law claims that seek relief for breach of contract, unjust enrichment, and defamation. The Court's original subject matter jurisdiction over state law claims must be premised on diversity jurisdiction under 28 U.S.C. § 1332, which requires that the parties on each side of an action are citizens of different states, with no defendant a citizen of the same state as any plaintiff, and the amount in controversy exceeds $75,000. As the party seeking this Court's jurisdiction, Plaintiff bears the burden of showing that the jurisdictional requirements have been met. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 802–03 (7th Cir. 2009). It is not clear whether the Plaintiff and the Defendant are of diverse citizenship because the Plaintiff has not offered any allegations regarding citizenship. In fact, the Plaintiff provides Indiana addresses for both himself and the Defendant, suggesting that diversity jurisdiction does not exist. Regardless, the Plaintiff has not established that the Court has subject matter jurisdiction under 28 U.S.C. § 1332 over any state law claims. The Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367 based on its original jurisdiction to hear the federal statutory claims. However, because the Court is dismissing the federal claims for failure to state a claim, the Court declines to exercise its supplemental jurisdiction over the state law claims. *See* 28 U.S.C § 1367(c)(3).

Accordingly, Plaintiff's request to proceed without prepayment of fees is denied, and the Complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court grants Plaintiff until November 19, 2021, to file an amended complaint. *See Luevano*, 722 F.3d at 1022 (stating that a litigant proceeding under the in forma pauperis statute has the same right to amend a complaint as a fee-paying plaintiff). Any amended complaint must cure the deficiencies identified in this

Opinion. Along with an amended complaint, Plaintiff must also file a new Motion to Proceed In Forma Pauperis. If Plaintiff does not file an amended complaint by November 19, 2021, the Court will direct the Clerk of Court to close this case. If Plaintiff does not file an amended complaint and the case is closed, Plaintiff is permitted to pursue his claims in state court because the Court has declined to exercise jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3). *See Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010) (explaining that when a district court dismisses the federal claim conferring original jurisdiction before trial, the court may relinquish supplemental jurisdiction over state law claims under § 1367(c)(3)).

## CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion to Proceed In Forma Pauperis [ECF No. 4] and DISMISSES without prejudice the Complaint [ECF No. 1] pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is granted up to and including November 19, 2021, to file an amended complaint as well as either a new Motion to Proceed In Forma Pauperis or the filing fee. Plaintiff is cautioned that, if he does not respond by the November 19, 2021 deadline, the Court will direct the Clerk of Court to close this case without further notice and the Court will relinquish jurisdiction over any state law claims.

SO ORDERED on October 21, 2021.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT